IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

VINSON BRENT TAYLOR,

    Petitioner,

v.                                                                  No. 1:20-cv-01232-JDB-jay
                                                                              Re: 1:11-cr-10018-JDB-1

ANGELA OWENS, Warden,

    Respondent.

ORDER DENYING PETITIONER'S MOTION TO STAY,
GRANTING RESPONDENT'S MOTION TO DISMISS,
DISMISSING THE § 2241 PETITION,
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
AND
DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner, Vinson Brent Taylor, a federal prisoner, has filed a pro se habeas corpus petition (the "Petition") pursuant to 28 U.S.C. § 2241. (Docket Entry ("D.E.") 1.)[1] The Petition challenges the application of presentence credits against Taylor's federal sentence by the Federal Bureau of Prisons (the "BOP"). Before the Court is the motion of Respondent, Angela Owens, to dismiss the Petition (D.E. 7), as well as a document submitted by Petitioner styled "Motion to Hold In Stay/Abeyance Reply to Warden['s] Opposition Response To Taylor's 28 U.S.C. 2241" (D.E. 10).[2] For the following reasons, Petitioner's motion is DENIED and Respondent's motion is GRANTED.

BACKGROUND

On November 28, 2012, Taylor pleaded guilty in the United States District Court for the Western District of Tennessee to possession with intent to distribute and distribution of less than

---

[1]Record citations are to documents in the instant case unless otherwise indicated.

[2]The Court will refer to Angela Owens as "Respondent" or the "Warden."

twenty-eight grams of cocaine base on December 8, 2010, in violation of 21 U.S.C. § 841(a)(1). (*United States v. Taylor*, 1:11-cr-10018-JDB-1 (W.D. Tenn.) ("No. 1:11-cr-10018-JDB"), D.E. 102.)  The undersigned sentenced him to 151 months of imprisonment, to be served concurrently with his state sentence, and three years of supervised release.  (*Id.*, D.E. 109.)  Taylor took an unsuccessful direct appeal.  (*Id.*, D.E. 131.)

## DISCUSSION

The inmate filed the Petition on October 16, 2020.  Attached to the pleading are copies of the grievances he submitted to prison authorities requesting the application of certain presentence credits and the denials of his requests.  (*See* D.E. 1-1.)  Petitioner seeks an order from the Court compelling the BOP to credit his federal sentence with the time he spent in custody before his federal sentence was imposed.  In his words, "The Bureau of Prisons . . . miscalculated . . . Willis[3]" credits by awarding only "the time [he] spent in official custody beginning from January 18, 2011 to June 06, 2011," instead of "January 18, 2011 through February 27, 2013."  (D.E. 1 at PageID 7.)

By order dated October 29, 2020, the Court directed the Warden to respond to the Petition. (D.E. 4.)  She filed her motion to dismiss on November 30, 2020, arguing that the BOP correctly calculated the credits applicable to Petitioner's presentence custody.  (D.E. 7.)  The inmate did not file a reply, although he was allowed to do so.  Instead, he submitted his "Motion to Hold In Stay/Abeyance Reply to Warden['s] Opposition Response To Taylor's 28 U.S.C. 2241."

---

[3]*Willis v. United States*, 438 F.2d 923 (5th Cir. 1971) (per cuiam).

I.      Petitioner's Motion.

Taylor requests an unspecified amount of additional time to file a reply, arguing that the Court should stay the proceedings while he "retrieve[s] the records from the State of Tennessee[]." (D.E. 10 at PageID 77.) He alleges that "[t]he record[s] would dispute the Warden's response and provide closure of a clear error contained within the Federal . . . Bureau of Prisons['] records." (*Id.* at PageID 78.)

An extension of time and a stay of the proceedings are not warranted on the ground advanced. Petitioner does not specify what state records he believes he needs. He also does not provide factual support for his general allegation that the records "would dispute the Warden's response." *Id.* In addition, as will be discussed below, the state court's judgment shows that he was sentenced to a term of incarceration in the custody of the Tennessee Department of Corrections on June 7, 2011—the date that is central to the correct calculation of the credits to be applied to his federal sentence. Taylor does not aver in his motion that the copy of the state-court judgment submitted by Respondent is incorrect or otherwise incomplete.[4] Because he has failed to show good cause for his request for an extension of time and a stay of the proceedings, the motion is DENIED.

---

[4] Petitioner also has not provided sufficient information for the Court to conclude that he timely filed his motion, which was due "on or before the due date of his reply." (D.E. 4 at PageID 20.) The inmate was required to file his reply within twenty-eight days of service of the Warden's motion. The motion to dismiss was filed on November 30, 2020, but Petitioner does not indicate when he received it. He also does not specify when he submitted his motion to prison authorities for mailing. The only date on record is the postmark of January 5, 2021, on the envelope in which his motion was mailed.

II.     Respondent's Motion.

The Warden argues that the state and federal records from Petitioner's criminal cases undisputedly show that the BOP properly calculated his *Willis* credits. In support, she has provided copies of those records and the sworn declaration of Forest Kelly, who has "been employed [by the BOP] as a Correctional Program Specialist at the Designation and Sentence Computation Center since December 2005." (D.E. 8-1 at PageID 35.) The records and Kelly's declaration[5] show the following timeline of relevant events:

1. On December 8, 2010, Taylor committed the federal offense of possession of cocaine base with intent to distribute and distribution. (D.E. 8-1 at PageID 35; No. 1:11-cr-10018-JDB-1, D.E. 2.)

2. Law enforcement officers in Dyer County, Tennessee, arrested Petitioner on January 18, 2011, for the related state crime of sale of a controlled substance. (D.E. 8-1 at PageID 36; Presentence Report ("PSR") at 19.)

3. On February 22, 2011, the federal indictment was filed as the case-initiating document in Taylor's federal case. (No. 1:11-cr-10018-JDB-1, D.E. 2.) Two days later, the state dismissed the related case. (D.E. 8-1 at PageID 36; PSR at 19.)

---

[5]There is no need for an evidentiary hearing. The documents submitted by Petitioner are consistent with the documents provided by the Warden. Moreover, the inmate has not disputed any particular document on which Respondent relies and has not challenged any of the averments set forth in Forest's declaration.

4

4. Taylor was transferred to federal custody on April 8, 2011, pursuant to a writ of habeas corpus ad prosequendum.[6] (D.E. 8-1 at PageID 36, 48; No. 1:11-cr-10081-JDB-1, D.E. 5.)

5. On June 7, 2011, while in federal writ custody, Petitioner was sentenced in Dyer County Circuit Court, in Case No. 09-CR-240, to a four-year term of incarceration for the state offense of retaliation for past action. (D.E. 8-1 at PageID 36, 50.)

6. On September 25, 2012, while still in federal writ custody, Petitioner pleaded guilty in Dyer County Circuit Court Case Nos. 09-CR-241, 09-CR-444A, and 09-CR-487. (*Id.* at PageID 36, 52-53.) He received a sentence of "11 months [and] 29 days" on each conviction, "to run concurrent with each other, but consecutive to 09-CR-240." (*Id.* at PageID 53.)

7. On February 28, 2013, Taylor was sentenced in his federal case to 151 months of incarceration. (No. 1:11-cr-10081-JDB-1, D.E. 109 at PageID 285.) The undersigned ordered the sentence to be served concurrently with the sentences imposed in Dyer County Case Nos. 09-CR-240, 09-CR-241, 09-CR-444A, and 09-CR-487. (*Id.*, D.E. 109 at PageID 285.)

8. The United States Marshals Service returned Petitioner to the custody of the State of Tennessee on March 6, 2013. (D.E. 8-1 at PageID 37, 47.)

9. In 2013, Taylor was sentenced in two Dyer County Circuit Court cases for drug and evading arrest offenses. (*Id.* at PageID 37, 58-59.) He was sentenced in the first case to a four-year term of imprisonment, and he received a two-year sentence in the second case. (*Id.*)

---

[6]Federal district courts may issue writs of habeas corpus ad prosequendum, which order the production of a prisoner for prosecution. *United States v. Cooke*, 795 F.2d 527, 530 (6th Cir. 1986) (citing *Carbo v. United States,* 364 U.S. 611, 621 (1961)).

10. The inmate "satisfied the state sentences on February 11, 2019, via expiration, and was released to the exclusive custody of federal authorities." (*Id.* at PageID 37 (citing *id.* at PageID 47-48, 61).)

11. The BOP performed a sentence computation for Taylor based on a 151-month term of confinement beginning February 28, 2013, the day his federal sentence was imposed. (*Id.* at PageID 38, 75.) The agency determined that the expiration of the full-term date was March 16, 2025, and that, after application of credits, his projected release date is May 7, 2023. (*Id.*)

This Court is authorized to issue a writ of habeas corpus on behalf of a prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). A claim challenging the BOP's failure to award sentence credit can be addressed in a § 2241 petition after the inmate has exhausted his administrative remedies with the BOP.[7] *United States v. Westmoreland*, 974 F.2d 736, 737 (6th Cir. 1992).

The doctrine of primary jurisdiction is sometimes pertinent to the calculation of a federal prisoner's sentence and release date. *See, e.g.*, *Williams v. Wilson*, Civil No. 6:10-CV-275-GFVT, 2011 WL 2560274, at *2 (E.D. Ky. June 28, 2011). The doctrine comes into play when an individual faces charges in two or more jurisdictions. *Ponzi v. Fessenden,* 258 U.S. 254, 260-61 (1922). In *Ponzi*, the United States Supreme Court held that

> the sovereign that first arrests an individual has primary control or custody over him; its claim over him has priority over all other sovereigns that subsequently arrest him; it is entitled to have him serve a sentence that it imposes, before he serves any sentence imposed by another sovereign; and it retains this priority, unless and until it has relinquished its jurisdiction to some other sovereign.

---

[7]In this case, the Warden agrees that "Petitioner exhausted his administrative remedies prior to the filing of this lawsuit." (D.E. 8 at PageID 26 n.1.)

*Williams*, 2011 WL 2560274, at *2 (citing *Ponzi*, 258 U.S. at 260-62). The sovereign retains primary custody "even when the prisoner is taken to federal court under a writ of habeas corpus ad prosequendum; in such instances, the prisoner is merely 'on loan' to the federal sovereign." *Id*. (citing *Thomas v. Whalen,* 962 F.2d 358, 361 n.3 (4th Cir.1992)).

Calculation of a federal prisoner's sentence, including its commencement date and any credit for custody before sentencing, is governed by 18 U.S.C. § 3585. *Alexander v. N. Bureau of Prisons*, 419 F. App'x 544, 546 (6th Cir. 2011). Subsection (a) of the statute provides that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). "By the terms of [that subsection], the running of a federal sentence cannot commence prior to the date on which it is imposed." *Montgomery v. Batts*, No. 2:16-cv-02755-MSN-tmp (W.D. Tenn. Mar. 10, 2020), D.E. 14 at PageID 90-91 (citing *Doan v. Lamanna*, 27 F. App'x 297, 299 (6th Cir. 2001); *Williams*, 2011 WL 2560274, at *4 ("Logically, a federal sentence cannot begin to run any earlier than the date on which it was imposed."). Subsection (b), which addresses whether a prisoner is entitled to credit for custody occurring before commencement of his federal sentence, specifies that

> [a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

7

18 U.S.C. § 3585(b).  By that provision, "Congress made clear that a defendant [cannot] receive a double credit for his detention time."  *United States v. Wilson*, 503 U.S. 329, 337 (1992); *see also Broadwater v. Sanders*, 59 F. App'x 112, 114 (6th Cir. 2003) ("Because [he] received credit toward his state sentence for the time period in question, he may not receive credit for his time toward his current federal sentence.").

Although § 3585(b) does not provide for any exceptions to its bar on double credits, the BOP recognizes instances where exceptions may be warranted.  *See* BOP Program Statement ("PS") 5880.28 (adopting exceptions set forth in *Willis* and *Kayfez v. Gasele,* 993 F.2d 1288 (7th Cir. 1993)).  The agency will award "presentence custody credits already credited to a concurrent state sentence under narrow circumstances where [it] has determined that the [state] credits will be of 'no benefit' to the federal prisoner."  *Cruz v. Sanders*, No. CV 07-04628-SVW (CT), 2008 WL 5101021, at *2 (C.D. Cal. Dec. 2, 2008) (quoting BOP PS 5880.28).  "No benefit" means that the application of the state credits to the state sentence will not shorten the prisoner's overall time in prison on the concurrent sentences.  *See Willis*, 438 F.2d at 925 ("The state purported to give Willis credit for his presentence custody. . . .  This did not help Willis, however, because his federal sentence is due to expire more than a year after his state terms."); *Kayfez*, 993 F.2d at 1290 ("The remaining 58 days credit would shorten the state term, but would not benefit Kayfez except that during 58 days he would be serving only one sentence instead of two concurrent ones.")

The first of the narrow circumstances set forth in the BOP's policy statement, and the one that is relevant in the present matter, occurs when "the federal and [state sentences] are concurrent and the Raw EFT [Effective Full Term] date of the [state sentence] is equal to or less than the Raw

8

EFT of the federal sentence." BOP PS 5880.28 at 1-22.[8]  In that instance, "[p]rior custody credits shall be given for any time spent in non-federal presentence custody that begins on or after the date of the federal offense up to the date that the first sentence begins to run, federal or non-federal." *Id.* "These time credits are known as *Willis* time credits." *Id.* (bolding omitted).

In the present case, Petitioner insists that he is entitled to *Willis* credits from the date of his arrest by state authorities on January 18, 2011, through February 27, 2013, the day before his federal sentence was imposed. Respondent maintains that the BOP properly applied both statutory and *Willis* credits. The Warden's position is well-taken.

In calculating the inmate's release date, the BOP first applied statutorily authorized presentence credits against Petitioner's federal sentence for the period January 18, 2011, through February 7, 2011, pursuant to § 3585(b).[9] (D.E. 8-1 at PageID 38-41.) The requirements of that statutory provision were met because Taylor, who was in primary custody of the state at the time, did not receive credit from the state court for those days. (*See id.* at PageID 50 (state-court judgment awarding presentence credits commencing February 8, 2011).) Therefore, to the extent Petitioner seeks credit for that time period, his request is moot because credits were applied—albeit not *Willis* credits.

---

[8]"The Raw EFT for both a federal and non-federal sentence is determined by adding the total length of the sentence to be served to the beginning date of the sentence resulting in a full term date of sentence (Raw EFT) that does not include any time credit, e.g., presentence or prior custody time or good time." BOP PS 5880.28. at 1-14.

[9]The BOP also awarded Petitioner prior time credits pursuant to § 3585(b) for the period September 16, 2010, through November 9, 2010. (D.E. 8-1 at PageID 38.) Taylor does not challenge that calculation.

Furthermore, the BOP's application of *Willis* credits for the 119-day period of February 8, 2011, through June 6, 2011, is supported by the record. Although the state court in Case No. 09-CR 240 credited Taylor's state sentence with his presentence detention for the same period (*see id.*), Petitioner could not benefit from those credits because they would have served to truncate a state sentence that was to end before his eventual 151-month federal sentence.[10] To provide a meaningful credit, the BOP's policy statement allowed the prison authorities to apply 119 *Willis* credits against his federal sentence. The credits were applied because Petitioner's presentence state custody began after the date of the federal offense and terminated 119 days later on June 6, 2011, the day before the first state sentence was imposed. *See* BOP PS 5880.28 at 1-22 ("[P]rior custody credits shall be given for any time spent in non-federal presentence custody that begins on or after the date of the federal offense up to the date that the first sentence begins to run, federal or non-federal.") Pursuant to the policy statement, the inmate could not accumulate *Willis* credits once his state sentence commenced on June 7, 2011. His assertion in the present matter that such credits continued to accrue until the imposition of his *federal* sentence on February 28, 2013, is without merit.

Because the BOP properly calculated Petitioner's *Willis* credits, Respondent's motion is GRANTED. The Petition is hereby DISMISSED. Judgment shall be entered for Respondent.

---

[10]The BOP's documents show that Taylor's raw EFT release date from his federal sentence is March 16, 2025. (D.E. 8-1 at PageID 75.) The documents do not, however, show the inmate's raw EFT release date from his state sentences. That is probably because the inmate had already fully served his state sentences by the time he first submitted his grievance to prison authorities in July 2019. Therefore, there is no dispute that the program statement's precondition for *Willis* credits—i.e., that the state sentence was set to end before the federal sentence—is met in this case.

APPEAL ISSUES

Federal prisoners who file petitions pursuant to 28 U.S.C. § 2241 challenging their federal custody need not obtain certificates of appealability under 28 U.S.C. § 2253(c)(1).  *Durham v. United States Parole Comm'n*, 306 F. App'x 225, 229 (6th Cir. 2009).  To appeal in forma pauperis in a habeas case under 28 U.S.C. § 2241, the petitioner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a).  *See generally Samarripa v. Ormond*, 917 F.3d 515, 517-18 (6th Cir.), *cert. denied*, 140 S. Ct. 515 (2019).  Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a)(1).  However, Rule 24(a) also provides that, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the petitioner must file his motion to proceed in forma pauperis in the appellate court.  *See* Fed. R. App. P. 24(a)(4)-(5).

In this case, because Petitioner is clearly not entitled to relief, the Court determines that any appeal would not be taken in good faith.  It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal in forma pauperis is DENIED.

IT IS SO ORDERED this 20th day of July 2021.

s/ J. DANIEL BREEN  
UNITED STATES DISTRICT JUDGE